

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 19, 2019

**BY ECF**

The Honorable Colleen McMahon
United States Chief District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States* v. *Pierre Schneider*, 18 Cr. 153 (CM)

Dear Chief Judge McMahon:

      The defendant in this case, Pierre Schneider, is scheduled to be sentenced on February 26, 2019 at 4:00 p.m., having pled guilty to conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349. For the reasons set forth below, the Government submits that a sentence within the Stipulated Guidelines Range of 8 to 14 months is warranted in this case.

    **A. Offense Conduct**

      Count One in the above captioned Indictment charges the defendant with conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349. From at least in or about August 2017 to November 2017, the defendant conspired to commit bank fraud through his involvement in a counterfeit check scheme.

      Specifically, the defendant and other known and unknown co-conspirators created and deposited counterfeit checks that appeared to draw from various victim businesses' bank accounts. These counterfeit checks were deposited into the bank accounts of various colluding accountholders at Capital One, N.A. The defendant and other scheme participants then withdrew funds off of these counterfeit checks before the various banks realized the fraud. (*See* Presentence Investigation Report dated October 5, 2018 ("PSR"), ¶¶ 8-13).

    **B. Procedural History**

      The defendant was initially charged by sealed Complaint dated February 9, 2018. A grand jury returned an indictment on February 22, 2018 that charged the defendant and six co-defendants with conspiracy to commit bank fraud and aggravated identity theft, in violation of Title 18, United States Code, Sections 1349 and 1028A.

The defendant was arrested on February 14, 2018. The defendant was presented before Magistrate Judge Debra C. Freeman and released on bail subject to certain conditions, including, among other things, home detention with GPS monitoring, strict pretrial supervision, and travel limited to the Southern and Eastern Districts of New York. (Dkt. Nos. 18; 19.)

On June 11, 2018, the Court approved of a modification of the defendant's bail conditions to allow travel to New Jersey for purposes of interviewing for employment and to permit travel to New Jersey to work at employment that he obtains there. (Dkt. No. 72.) On or about August 12, 2018, the Court ordered that the defendant's bail conditions be modified to remove the condition of home detention with GPS monitoring. (Dkt. No. 96.)

On September 7, 2018, before Magistrate Judge Henry B. Pitman, the defendant entered a guilty plea, pursuant to a plea agreement, to conspiracy to commit bank fraud as charged in Count One of the Indictment.

On November 28, 2018, the Probation Office issued the amended final PSR. Consistent with the plea agreement, the PSR calculates an offense level of 9, a criminal history category of III, and a resulting Guidelines range is 8 to 14 months' imprisonment (the "Stipulated Guidelines Range"). The plea agreement also provides for restitution in an amount to be determined by the Court, pursuant to 18 U.S.C. § 3663A.

All of the co-defendants have entered guilty pleas. Two of the co-defendants have already been sentenced: Sire Gaye to two months' imprisonment on November 14, 2018, and Sierra Cameron to eight months' imprisonment on February 8, 2019. The remaining co-defendants are scheduled to be sentenced as follows: Darren Thomas, Widolph Brumaire, and Robbie Black have sentencing control dates of April 15, 2019, and Anthony Castillo has a sentencing control date of May 3, 2019.

C. Discussion

1. Applicable Law

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted

Hon. Colleen McMahon                                                                                                                     Page 3
February 19, 2019

sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

## 2. A Sentence Within the Stipulated Guidelines Range Is Appropriate In This Case

A Guidelines sentence is necessary here to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to this defendant and other similarly situated individuals, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). All of these considerations weigh heavily in favor of a sentence within the Stipulated Guidelines Range of 8 to 14 months' imprisonment.

*First*, a sentence within the Guidelines Range is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

Generally, schemes of this kind, in which participants deposit counterfeit checks using the bank account information of various victim businesses, are widespread and represent a major problem and expense for financial institutions and the consumers they serve. As in this scheme, defendants sometimes utilize the payroll or commercial checking account information of business entities on counterfeit checks as a way to avoid detection and maximize scheme profits. By using these business accounts, scheme participants complicate the identification of such fraudulent transactions and render it difficult for a victim businesses to close a compromised account, as such account information is used for numerous obligations of a business and is thus difficult to change. A significant sentence for defendants involved in such schemes is necessary to reflect the seriousness, and the effects, of such crimes.

With respect to this specific defendant, the offense conduct shows his active participation and central role in the conspiracy. The defendant appears in surveillance footage for a number of banks, demonstrating extensive involvement in the deposits and withdrawals of counterfeit checks. (PSR ¶ 18.) Also evident from the surveillance footage is the defendant's close relationship to a leader of the conspiracy, Widolph Brumaire. Schneider and Brumaire appear on surveillance footage together on multiple occasions, including in Miami, Florida. Schneider seems to have had an organizing role beyond simply making fraudulent deposits and withdrawals, namely, distributing colluding accountholders' information among other members of the conspiracy. Schneider appears on surveillance footage making fraudulent withdrawals from a particular

Hon. Colleen McMahon                                                                                                         Page 4
February 19, 2019

colluding accountholder's bank account at Capital One, and then, based on a review of communications through social media, the same colluding accountholder's information at other banks was shared among, and utilized by, other members of the conspiracy.

This type of role, involvement in the sharing of information to facilitate others' involvement in the conspiracy, suggests greater insight into and responsibility for the conspiracy, comparable to someone like Sierra Cameron who was involved in multiple transactions, close to the conspiracy's leaders, and privy to the organization and information-sharing underlying the scheme. In the Government's view, Schneider has relatively greater culpability than other individuals whose involvement was limited to deposits and withdrawals, like Anthony Castillo, or individuals like Sire Gaye, who on a single occasion provided genuine account information but whose involvement in the scheme was otherwise limited.

*Second*, a sentence within the Stipulated Guidelines range is necessary to protect the public and deter the defendant's conduct. The defendant – even given his young age – is not a first-time offender. Far from it. As set forth in the PSR, on February 19, 2013, the defendant was convicted in Brooklyn, New York of robbery in the third degree after, in concert with another person, forcibly stealing property – an iPad – from another person. The defendant was arrested for the robbery on August 1, 2012. (*See* PSR ¶ 43.) On or about February 19, 2013, in Brooklyn, New York, the defendant also was convicted of attempted robbery in the third degree. The defendant was arrested on November 15, 2013 after, acting in concert with another, he attempted to forcibly steal property of another and caused injury to that person. The defendant was on probation for this conviction at the time of the offense conduct. (*See* PSR ¶ 44.)

The defendant's participation in the bank fraud conspiracy indicates that he has continued to engage in crime as a way of making money, that he continues to work with other individuals to commit these thefts, and that, if anything, he has graduated to more sophisticated fraud schemes that are not so easily detected as the robberies described above. Brief periods of incarceration have not sufficed to deter the defendant from additional crimes.

Furthermore, the Government finds it particularly troubling that the defendant was on probation at the time of the offense conduct. In other words, he evaded detection and undertook a sustained and prolific role in a fraud scheme at the same time that he was under the supervision of the state's probation office. The defendant continued to commit crimes while he was being monitored by the probation officer, thereby demonstrating that a significant period of incarceration is necessary to provide sufficient deterrence for this defendant. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B).

The Government also notes that, as discussed in the detention hearing before the Court on February 15, 2019, the defendant was arrested on January 8, 2019, after recklessly driving substantially over the speed limit and running three stop signs. The Government understands that the defense disputes whether the defendant was aware that law enforcement officers were pursuing him prior to the stop, but does not dispute the underlying reckless driving. Additionally, in the car that the defendant was driving, the law enforcement officers found a forged check, for which the defendant was arrested on January 9, 2019. The Government's understanding is that the defense acknowledges that a forged check was in the car, but disputes the fact that the defendant was aware of, or in possession of, the check. The Government is available to resolve any disputed issues of

Hon. Colleen McMahon                                                                                          Page 5
February 19, 2019

fact at a hearing before the Court, pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979). However, in the Government's view, the undisputed facts can and should be considered by the Court, and corroborate what the defendant's criminal history otherwise makes clear. That the defendant was arrested while pending sentencing in the instant case, that the defendant was driving recklessly and at least in the presence of other individuals engaged in fraud, strongly suggests that a sentence within the Stipulated Guidelines Range is necessary to provide adequate deterrence to this individual defendant.

As to general deterrence, a sentence within the Guidelines Range would send a message to others who would consider committing bank fraud (at the cost of banks and/or innocent victims) that such conduct carries serious consequences. The Government respectfully submits that a nontrivial term of incarceration is necessary to deter the defendant from future offenses, and to achieve the sentencing goal of protecting the public.

### D. Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence within the Guidelines Range of 8 to 14 months' imprisonment would be fair and appropriate in this case.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____
Mollie Bracewell
Assistant United States Attorney
(212) 637-2218

cc: Winston Lee, Esq. (via ECF)